```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EDWARD MANFREDONIA

                    Plaintiff,                    MEMORANDUM and ORDER

        -against-                                 08-CV-1678 (SLT) (LB)

SECURITIES AND EXCHANGE COMMISSION
OF THE UNITED STATES, DEPARTMENT OF
JUSTICE OF THE UNITED STATES, and
FEDERAL BUREAU OF INVESTIGATION,

                    Defendants.
------------------------------------------------------------x
```

**TOWNES, United States District Judge:**

Edward Manfredonia ("Plaintiff") brings this action against the U.S. Securities and Exchange Commission ("SEC"), the United States Department of Justice ("DOJ"), and the Federal Bureau of Investigation (collectively, "Defendants") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking an order compelling Defendants to comply with FOIA requests Plaintiff allegedly made to those agencies. Defendants now move to dismiss Plaintiff's FOIA claims pursuant to Federal Rule of Civil Procedure 12. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

## BACKGROUND

In his Amended Complaint, Plaintiff alleges a long, ongoing, and elaborate conspiracy and cover-up involving a number of high-profile figures in the Wall Street, financial, and political communities. Specifically, Plaintiff alleges that through a web of mafia connections and insider market manipulation, these figures infiltrated the securities exchanges and by, among other things, covering up an alleged rape, caused the financial panic of 2008.[1] Plaintiff, who

---

[1] *See, e.g.,* Plaintiff's Opp. at 1-4 (alleging that this conspiracy included, among others, Princeton professor of economics and author of *A Random Walk Down Wall Street*, Burton



claims to have uncovered this criminal activity, alleges that the perpetrators have sought to silence him as part of an effort to cover-up their criminal schemes. Plaintiff suggests that the alleged cover-up of the alleged rape was part of the effort to shield collaborators from investigation by discrediting Plaintiff.

To expose these alleged crimes, to prevent their further deleterious impact on global economic prosperity, and to clear his good name, Plaintiff has sought documents allegedly in the possession of the DOJ, SEC, and FBI. Plaintiff alleges that he made numerous unsuccessful requests for these documents throughout the 1990's and early 2000's. These allegations, which are assumed to be true for the purposes of this motion, are chronicled in some detail below.

**Plaintiff's FOIA Requests**

According to the Complaint, Plaintiff has been making FOIA requests related to these matters since at least 1993. Plaintiff alleges that between January 10 and July 27, 1993, he made five separate FOIA requests to the SEC. On January 10, 1993, he wrote a letter to William McLucas, Director of Enforcement at the SEC, asking if Mr. McLucas would "please reply to my request to vie[w] my files at the SEC[.]" Am. Compl. at 18. On January 24, 1993, he wrote to Arthur Levitt, then Chairman of the SEC, requesting that the SEC "order the [American Stock Exchange] ("AMEX") to grant me access to my records." Am. Compl. at 19. On February 17, 2003, Plaintiff wrote a letter to Hanna Hall, FOIA/Privacy Act ("FOIPA") Branch Chief at the SEC, requesting some materials. Am. Compl. at 18, Ex 11. On July 6, 1993, Plaintiff wrote a second letter to Mr. Levitt asking to view his "dossier." Am. Compl. 18. On July 27, 1993,

---

Malkiel, and former Federal Reserve Chairman Paul Volcker). Plaintiff alleges that "this financial crisis can be traced to the efforts of 6 individuals to cover up heinous crime on Wall Street," and that such crimes include multiple rapes, money laundering, drug smuggling, bribery, auction rigging (of U.S. Treasury Notes), and insider trading. *See id.*

2

Plaintiff wrote a third letter to Mr. Levitt, making the same demand as the January 24 letter with respect to the AMEX. Am. Compl. at 19.

About one month after sending the third letter to Mr. Levitt, Plaintiff received a response from the SEC stating: "Your letters dated July 26[2] and July 27, 1993 addressed to Marcy Schapiro, Acting Chairman and William McLucas, Director of Enforcement, respectively were referred to this office for a response. . . . The Commission does not have the authority to compel the AMEX to produce your records to you." Am. Compl. at 19. Plaintiff does not indicate whether there was any response to his other letters to the SEC.

On May 3, 1994 Plaintiff sent a letter to Benjamin Burrell, Director of the Justice Management Division at the DOJ, stating that he "wish[ed] to have access to [his] records." Am. Compl. Ex. 10. Plaintiff states that he "never received a response" to that letter. Am. Compl. at 17. However, Plaintiff does not allege that he sent any additional FOIA requests to the DOJ.

Plaintiff also wrote a number of letters during the 1990's requesting access to documents and files at the FBI. In a letter dated July 21, 1993, he wrote to Kevin O'Brien, FOIPA Section Chief at the FBI, "concerning [his] request to view [his] records." Am. Compl. at 21. Although he cites to Exhibit 12, there is no letter with the indicated date or request included in that exhibit. There is, however, a subsequent request dated October 4, 1993, which Plaintiff alleges was sent October 15, 1993, and in which Plaintiff asks that he "be given access to my files" and states that "[y]ou, Mr. O'Brien, have delayed and have not granted me access to my files." Am. Compl. at 21, Ex. 12. Also addressed to Mr. O'Brien and included in Exhibit 12 is a letter dated March 19, 1994 in which Plaintiff followed up on a 1993 request to the FBI that, in early 1994, resulted in the FBI releasing to Plaintiff a document that Plaintiff has termed his "wire order." *Id.* The

---

[2] The Court assumes that July 26 is intended to read July 6, although it is unclear whether this letter was also a response to the January 10, 1993 letter addressed to Mr. McLucas.

March 19 letter indicates that Plaintiff had "enclosed a copy of my request to view my records." *Id.*

Several years later, in a letter dated June 11, 1998, Plaintiff wrote to Mary Jane Broca, a Supervisory Special Agent, requesting "specific letters, which Broca had written." Am. Compl. at 22. Agent Broca directed Plaintiff to contact the FBI's FOIPA section, prompting Plaintiff to again correspond with Mr. O'Brien. That correspondence culminated in a letter dated December 14, 1998, attached with Exhibit 12. In that letter, Plaintiff wrote "[o]f course, I wish to have copies of those missives which an FBI Agent wrote concerning me." Am. Compl. Ex. 12. Following that letter, Plaintiff received no response from the FBI and Plaintiff alleges receiving no documents from the FBI save the "wire order" released to him in 1994 or 1995. Am. Compl. at 22-23.

In 2002, Plaintiff made two FOIA requests through an attorney, Michael Bressler. Plaintiff asked Mr. Bressler to request his FBI files. Although he no longer possesses a copy of the letter written by Mr. Bressler, Am. Compl. at 22, Plaintiff implies that the request Mr. Bressler made to the FBI was sent around the same time and resembled a request that Mr. Bressler sent to the SEC on February 25, 2002. *Id.* Accordingly, as evidence of the attorney's request to the FBI, Plaintiff includes a copy of Mr. Bressler's February 25, 2002 request to the SEC. Am. Compl. Ex. 11. That request stated: "Pursuant to the federal Freedom of Information Law, Mr. Manfredonia hereby requests any and all documents pertaining to him, directly or indirectly." *Id.* Plaintiff alleges that there were "letters, which Plaintiff had received from the SEC," in the possession of Mr. Bressler and that were lost when Mr. Bressler was disbarred in 2004. Am. Compl. at 20.

On April 18, 2008, Plaintiff commenced this action seeking, *inter alia*, an order pursuant to the FOIA compelling production of all of the aforementioned documents. Plaintiff's initial *pro se* Complaint in this case also alleged various causes of action raising "[c]onstitutional issues involving the First Amendment, the Fourth Amendment, Fifth Amendment, and the Fourteenth Amendment." Compl. at 2. Although the Court dismissed the constitutional claims, *Manfredonia v. S.E.C.*, No. 08-CV-1678, slip op. at 9 (SLT) (E.D.N.Y. June 24, 2008), Plaintiff was given leave to amend his complaint for the purpose of supporting his FOIA-based claims. *Id.* Plaintiff filed his Amended Complaint on July 14, 2008.

**Defendants' Motion to Dismiss**

Defendants now move to dismiss the Amended Complaint on two grounds. First, Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this Court lacks subject matter jurisdiction. Defendants contend that Plaintiff failed to exhaust his administrative remedies in each of the alleged FOIA requests, and argue that such exhaustion is a jurisdictional prerequisite to filing a FOIA claim. Def. Memo of Law at 1. Second, Defendants contend that all of Plaintiff's pre-2002 FOIA claims are time-barred by the statute of limitations under 28 U.S.C. § 2401(a) and subject to dismissal for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6). Def. Memo of Law at 18.

Plaintiff does not dispute the legal merits of the motion to dismiss in his opposition papers. Plaintiff concedes that he did not exhaust his administrative remedies but contends that he received some documents from the FBI without making properly formed requests pursuant to FOIA. Plaintiff cites the Court to the judicial doctrine of *stare decicis*, arguing that "the government's actions [in providing these documents despite his failure to exhaust administrative remdies] have negated this form. Stare decisis must prevail." Plaintiff's Opp. at 10.

Accordingly, Plaintiff contends that any government motion to dismiss for failure to exhaust administrative remedies should be rejected. Plaintiff also opposes the motion to dismiss on the grounds that all legal arguments made by the United States Attorney for the Eastern District of New York should be negated.[3]

## DISCUSSION

### A. Subject Matter Jurisdiction and Defendants' Rule 12(b)(1) Argument

"When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Financial Serv's Corp. v. Drakos*, 140 F.3d 129, 131 (2nd Cir. 1998) (internal citations omitted). When a defendant seeks to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), federal courts are "duty bound . . . to address the issue of subject matter jurisdiction at the outset." *Filetech v. France Telecom S.A.*, 157 F.3d 922, 929 (2d Cir. 1998). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The Court has a duty to resolve disputed jurisdictional facts, *Cargill Int'l S.A. v. M/T Pavel Dyneko*, 991 F.2d 1012, 1019 (2d Cir. 1993), and in so doing must review evidence outside of the pleadings "if the resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001). "[T]he plaintiff asserting subject

---

[3] Specifically, Plaintiff alleges that the U.S. Attorney for the Eastern District of New York has covered up crimes perpetrated by a wide variety of players, including the Russian Mob and "Crazy" Eddie Antar, and ranging from money laundering to securities fraud. Plaintiff argues that the U.S. Attorney's alleged actions "demand a negation of any legal argument that is made for the dismissal of [Plaintiff's] action." *See* Plaintiff's Opposition to Defendants' Motion to Dismiss at 9.

matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (citing *Makarova*, 201 F.3d at 113); *see also Fisher v. FBI*, 94 F.Supp.2d 213, 216 (D. Conn. 2000) (placing burden of establishing valid jurisdiction in a FOIA claim on plaintiff).

Defendants argue that judicial review in this case is unavailable, due to lack of subject matter jurisdiction, on grounds that the plaintiff has failed to exhaust all available administrative remedies. *See* Def. Memo of Law at 11. In support of this proposition, Defendants principally rely on two cases from the Eastern District of New York: *Robert v. Dep't of Justice*, No. 05-CV-2533 (NGG), 2008 WL 2039433, at *3 (E.D.N.Y. May 9, 2008) ("*Robert II*") and *Lane v. Dep't of Justice*, No. 02-CV-6555 (ENV), 2006 WL 1455459, at *5 (E.D.N.Y. May 22, 2006). *See* Def. Memo of Law at 9. Both cases held that a failure to exhaust administrative remedies stripped the court of jurisdiction. *See Robert II*, 2008 WL 2039433; *Lane*, 2006 WL 1455459. While both these cases hold that a failure to exhaust administrative remedies strips a district court of jurisdiction, these cases both rely on outdated authority from the District of Columbia Court of Appeals. *Robert II* relies on a district court opinion from the D.C. Circuit, *Judicial Watch, Inc. v. Fed. Bureau of Investigation*, No. 00-745 (TFH), 2001 WL 35612541, at *12 (D.D.C. Apr. 20, 2001), which itself cited a D.C. Circuit opinion, *Oglesby v. United States Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990), for the proposition that failure to exhaust administrative remedies in a FOIA claim strips the court of subject matter jurisdiction. *Lane* principally relies on *Sloman v. United States Dep't of Justice*, 832 F.Supp. 63 (S.D.N.Y.1993), and two other cases which expressly rely on *Sloman*: *Thomas v. Office of U.S. Att'y for the E. Dist. of N.Y.*, 171 F.R.D. 53 (E.D.N.Y. 1997) and *Hogan v. Huff*, No. 00-CV-6753 (VM), 2002 WL 1359722 (S.D.N.Y. June 21, 2002). *Sloman* does not cite any authority for the proposition

that exhaustion of administrative remedies is a jurisdictional prerequisite to bringing an action under FOIA. However, *Sloman*, too, appears to rely primarily on *Oglesby* and another, earlier D.C. Circuit opinion: *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).

*Oglesby* never expressly held that the failure to exhaust administrative remedies creates a jurisdictional bar to an action pursuant to FOIA. However, even to the extent that *Oglesby* ever stood for the proposition that a failure to exhaust administrative remedies also denied the courts of subject matter jurisdiction, the D.C. Circuit has backed away from that interpretation. In *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003), the D.C. Circuit expressly held that "the exhaustion requirement is not jurisdictional," and instead favored a jurisprudential doctrine that considers "the purposes of exhaustion" and the "particular administrative scheme" (citing *Oglesby*, 920 F.2d at 61)). In *Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004), the D.C. Circuit expressly relied on *Hidalgo* in rejecting the jurisdictional approach to exhaustion of administrative remedies in the context of a FOIA claim. The Fifth and Eleventh Circuits have also declined to treat failure to exhaust administrative remedies in the FOIA context as a jurisdictional defect. *See Taylor v. Appleton*, 30 F.3d 1365, 1368 n. 3 (11th Cir. 1994) ("Exhaustion of administrative remedies is not a jurisdictional requirement. . . . Therefore, the FOIA claim should not have been dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.") (citing *Dresser Indus., Inc v. U.S.*, 596 F.2d 1231, 1238 (5th Cir. 1979))).

While the Second Circuit has not yet followed either the Fifth or Eleventh Circuits, the Second Circuit has opined that the law is unsettled as to whether exhaustion of administrative remedies is a jurisdictional prerequisite to litigating the FOIA claim. Indeed, in *Robert v. Dep't*

*of Justice*, 193 Fed. Appx. 8, 9 (2d Cir. 2006) ("*Robert I*"), an appeal during the course of the same litigation that led to *Robert II*, the Second Circuit indicated uncertainty as to whether exhaustion of administrative remedies in a FOIA claim is a jurisdictional issue. Following *Robert I*, several district courts in this circuit have declined to rely on jurisdictional grounds to dismiss claims wherein a plaintiff failed to exhaust administrative remedies. *See, e.g., Hadden v. Bureau of Prisons*, No. 07-CV-8586 (DF), 2008 WL 5429823, at *4 (S.D.N.Y. Dec. 22, 2008) (declining to use Fed. R. Civ. P. (12)(b)(1) and jurisdictional grounds to dismiss a FOIA claim); *Dinsio v. Fed. Bureau of Investigation*, 445 F.Supp.2d 305, 309 (W.D.N.Y. 2006) (holding that a jurisprudential doctrine, not a jurisdictional issue, precludes judicial review where a plaintiff fails to exhaust administrative remedies in the FOIA context).

In light of *Robert I* and the above cited circuit and district court opinions, this Court declines to hold that Plaintiff's failure to exhaust administrative remedies on his FOIA claims deprived the Court of subject matter jurisdiction. Rather, the Court will address Defendants' failure to exhaust argument under Fed. R. Civ. P. 12(b)(6), turning first to Plaintiff's most recent claims stemming from 2002 requests through his then-attorney, Michael Bressler.

**B. Plaintiff's 2002 FOIA Claims Barred for Failure to State a Claim**

Although exhaustion of administrative remedies may not be a jurisdictional prerequisite, it remains a hurdle to obtaining relief through the courts. It is well established that before filing a FOIA claim in court, a plaintiff must exhaust administrative remedies. *See, e.g., Spannaus*, 824 F.2d at 58 ("It goes without saying that exhaustion of remedies is required in FOIA cases."); *Taylor*, 30 F.3d at 1367-68 n. 3 (concluding that exhaustion, though not jurisdictional, is a "condition precedent" to filing suit). However, in order to exhaust administrative remedies, a plaintiff must make a valid FOIA request that complies with the applicable regulations. Among

9

other things, the FOIA requires that a proper request present proof of identity, *Summers v. U.S. Dept. of Justice*, 999 F.2d 570, 571 (D.C. Cir. 1993), "reasonably describe[]" the records sought, and "compl[y] with the agency's published rules." *See Sussmann v. U.S. Dep't of Justice*, No. 03-CV-3618 (DRH), 2006 WL 2850608, at *9-10 (E.D.N.Y. Sept. 30, 2006) (citing 5 U.S.C. § 552(a)(3)(A)).[4]

The two FOIA requests which Plaintiff's attorney, Michael Bressler, made on Plaintiff's behalf in 2002 to the SEC and to the FBI did not comply with the applicable regulations. Mr. Bressler's letter to the SEC, which is attached to the Amended Complaint as Exhibit 11, stated that Plaintiff "requests any and all documents pertaining to him, directly or indirectly." Am. Compl. at 20. However, SEC regulations require that FOIA requests "reasonably describe the records sought with sufficient specificity with respect to names, dates and subject matter." 17 C.F.R. § 200.80(d)(3). Plaintiff's request lacks dates or subject matter, and lacks even the cursory level of specificity required by the FOIA and by SEC regulations. Accordingly, Plaintiff has failed to exhaust all administrative remedies with respect to his 2002 FOIA request to the SEC. *See Sussmann*, 2006 WL 2850608 at *9-10.

Although Plaintiff does not have a copy of Mr. Bressler's request to the FBI, he implies that this request was essentially identical to the FOIA request Mr. Bressler made to the SEC. Plaintiff asserts in the Amended Complaint that the request was for "Plaintiff's FBI files" and goes on to clarify that he intended this to mean anything that might have mentioned his name. Am. Compl. at 22. The FBI regulations, like the SEC regulations, require a description of the requested documents that includes "enough detail to enable Department personnel to locate them with a reasonable amount of effort." 28 C.F.R. § 16.3(b). The regulation goes on to state that

---

[4] In *Gillin v. I.R.S.*, 980 F.2d 819 (1992), the First Circuit recognized the same requirement and went on to state that the plaintiff's subsequent clarification of his request, during the course of litigation, represented "an impermissible attempt to expand a FOIA request." *Id.* at 823 n. 3.

where possible, the request "should include specific information about each record sought, such as the date, title or name, author, recipient, and subject matter of the record." *Id.* A broad request for "any and all documents" pertaining to an individual is neither specific with respect to any particular type of record, nor does it provide any of the other indicators that might allow the desired records to be located with reasonable efforts. Am. Compl. at 22, Ex. 11. Accordingly, the request Mr. Bressler sent to the FBI was inadequate to exhaust Plaintiff's administrative remedies for the exact same reason stated in the preceding paragraph.

Plaintiff appears to allege that he received a response, now lost, from the SEC following Mr. Bressler's request. Am. Compl. at 20. Assuming that Plaintiff received such letters as a response, and now contends dissatisfaction with that response from the SEC, Plaintiff does not allege that he made an appeal to the SEC. Both the SEC regulations, 17 C.F.R. §200.80(d)(6) and the FOIA statute, 5 U.S.C. § 552(a)(6), require administrative appeal of an adverse determination.

Plaintiff has therefore failed to exhaust his administrative remedies with respect to his 2002 FOIA requests of both the SEC and the FBI as required under the FOIA's administrative scheme. *See Sussmann*, 2006 WL 2850608, at *9-10 (characterizing a request for "all records . . . that pertain to me" as inadequate under FOIA); *Judicial Watch, Inc.*, 2001 WL 35612541, at *12 ("failure to reasonably describe the records sought" among those defects described as a failure to exhaust administrative remedies). Accordingly, Plaintiff's 2002 FOIA requests are dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**C. Plaintiff's pre-2002 FOIA Claims Barred by the Statute of Limitations**

Plaintiff's remaining FOIA claims outlined in Part I.A are barred by the statute of limitations. The FOIA itself does not provide a statute of limitations. The general statute of

limitations for suits brought against the United States, 28 U.S.C. § 2401(a), is therefore applicable and bars those suits commenced more than six years after the claim accrues. *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987). Causes of action against administrative agencies accrue within the meaning of 28 U.S.C. § 2401(a) "as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." *Spannaus*, 824 F.2d at 57.

A cause of action in this context may accrue in one of two ways. First, the cause may accrue upon exhaustion of all administrative remedies. *See id.* ("a cause of action does not 'first accrue' until a party has exhausted all remedies whose exhaustion is a prerequisite to suit"). Second, where an agency "does not make a determination on a FOIA request" within 20 business days as provided by the statute, 5 U.S.C. § 552(a)(6)(A)(i)-(ii), the requester has "constructively exhausted administrative remedies" and the claim accrues at that time. *See* 5 U.S.C. § 552(a)(6)(C) ("any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph"); *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 8 (2d Cir. 1995) ("administrative remedies are 'deemed exhausted' if the agency fails to comply with the 'applicable time limit' provisions of the FOIA").

Even assuming that Plaintiff's pre-2002 FOIA requests were not defective and that Plaintiff exhausted his administrative remedies, the statute of limitations has run with respect to these claims. Plaintiff's last communication, aside from those in 2002, with any of the agencies in question, was on December 14, 1998. With the exception of his correspondence following and referring to the FBI's release of the "wire order," Plaintiff does not allege pursuing any administrative appeal with respect to any prior request and in most cases alleges that he received

no response to his missives, including the December 14, 1998 letter to the FBI. Am. Compl. at 22. Taking Plaintiff's allegations as true, a failure by the FBI to respond to the plaintiff's December 14, 1998 request would have resulted in constructive exhaustion and accrual of the Plaintiff's claim 20 business days later, on January 13, 1999. 5 U.S.C. § 552(a)(6)(C). Plaintiff failed to file an action within six years, by January 13, 2005, instead waiting over nine years to file. Accordingly, that claim as well as all claims based on prior requests are barred by the statute of limitations, 28 U.S.C. § 2401(a), and are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted and all of Plaintiff's FOIA claims described above are dismissed with prejudice. Since all of Plaintiff's other claims were dismissed by this Court's Order dated July 24, 2008, the Clerk of the Court is directed to close this case.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
December 2, 2009